UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZURU, LLC, a California limited liability company,<br><br>Defendant. | Case No. 5:25-cv-01908-MCS-AJR<br><br>**ORDER RE: MOTION TO DISMISS (ECF NO. 15)** |

    Defendant Zuru, LLC, moves to dismiss the first amended complaint of Plaintiff Silvia Garcia. (Mot., ECF No. 15.) Plaintiff filed a brief opposing the motion, (Opp'n, ECF No. 17), and Defendant filed a reply, (Reply, ECF No. 18). The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

///

## I. BACKGROUND

This is a putative class action concerning alleged false advertising of consumer products due to excessive empty space in product packaging, also known as slack fill. According to the complaint, Defendant sells MONDAY Haircare–branded shampoo products. (FAC ¶ 1, ECF No. 12.) Defendant sells the products in opaque containers that hinder consumers from visually perceiving the volume of liquid shampoo contained therein. (*Id.* ¶¶ 1, 18–20.) Even though the products are sold by volume, (*see id.* ¶ 1 (alleging the product is 12 fluid ounces, and including a photograph of the product that displays the volume of product in fluid ounces and milliliters on the packaging face)),[1] Plaintiff theorizes that Defendant misleads reasonable consumers into believing the products contain more product than they do, as the liquid shampoo occupies about 75% of the volume of the bottle, (*e.g.*, *id.* ¶¶ 16–20, 28–30).[2]

Plaintiff purchased Defendant's "MOISTURE + HYALURONIC ACID" "For Dry and Dull Hair" product for personal use from a retail store for $6.99 before tax. (*Id.* ¶¶ 1, 60–61.) Plaintiff, a serial slack fill litigant and self-described consumer rights tester, (*id.* ¶ 62),[3] was "disappoint[ed]" to discover the volume of shampoo was not commensurate with the size of the bottle, and she alleges "she would not have purchased

---

[1] Both parties stake their positions on the premise that the product is sold by weight. (*E.g.*, Mot. 10 ("The Product is sold by weight . . . ."); Opp'n 3 ("[A]ll versions are composed of shampoo, and contain a net weight of 12 fluid ounces.").) Fluid ounces and milliliters are measures of volume, not weight. Fed. R. Evid. 201(b)(1).

[2] Defendant notes that Plaintiff does not specify whether her 75% estimate of the fill level accounts for the space the dip tube attached to the pump lid occupies in the bottle. (Mot. 23 n.9.) Based on the Court's perception of a photograph depicting a product container that appears to be over 75% full with the pump lid removed, the Court understands Plaintiff to allege that the product occupies 75% of the capacity of the bottle after removing the pump lid. (*See* FAC ¶ 1.)

[3] A search of Plaintiff's name in the Court's CM/ECF system returns about two dozen cases Plaintiff initiated in this district in the past two years. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

the Product, or would not have paid a price premium for the Product, had she known that the size of the bottle was false and misleading," (*id.* ¶¶ 62, 65). Plaintiff also identifies two other MONDAY Haircare products Defendant sells that contain similar nonfunctional slack fill due to the common manufacturing process of the product line. (*Id.* ¶¶ 58–59.)

Plaintiff seeks to represent a qualified class of "[a]ll persons who purchased a MONDAY Haircare–branded shampoo product in California from July 25, 2021 through the date a class is certified for primarily personal, family, or household purposes, and not for resale." (*Id.* ¶ 76 (emphasis removed); *see id.* ¶¶ 77–86.) She brings claims of (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of California's False Advertising Law ("FAL"), and (3) violation of California's Consumer Legal Remedies Act ("CLRA"). (*Id.* ¶¶ 87–142.)

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Rule 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III

standing analysis upon a facial challenge. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. DISCUSSION

#### A. Standing

Defendant asserts two arguments challenging Plaintiff's constitutional standing to sue: (1) Plaintiff could not have been injured by MONDAY Haircare products she did not purchase, and (2) Plaintiff cannot pursue injunctive relief because she faces no threat of impending harm. (Mot. 15–17.)[4] Generally, questions of subject-matter

---

[4] Defendant also argues that Plaintiff fails to plausibly allege an economic injury she

jurisdiction must be resolved before others. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

As to Defendant's first argument, there is significant disagreement in the district courts in this circuit as to whether consumer product class action plaintiffs may pursue claims based on unpurchased products, a split in which the Court has not chosen a side. *Lozano v. Bowmar Nutrition LLC*, No. 2:21-cv-04296-MCS-KS, 2021 U.S. Dist. LEXIS 191266, at *6–8 (C.D. Cal. Aug. 19, 2021) (Scarsi, J.) (identifying three approaches, rejecting one, and declining to choose between the remaining two). The briefing on this motion is too sparse for the Court to commit to a position. Given the disposition in the following section, for the sake of this motion only, the Court adopts the "prevailing view" that "sufficient or substantial similarity between the purchased and non-purchased products satisfies the standing requirement for the non-purchased products." *Id.* at *6–7 (internal quotation marks omitted). Plaintiff alleges that two other MONDAY Haircare products contain nonfunctional slack fill similar to the slack fill in the product she purchased given that "[t]he manufacturing process to fill and seal the containers of MONDAY Haircare–branded shampoo products is either substantially similar or identical regardless of the specific shampoo variety." (FAC ¶ 59; *see id.* ¶ 58.) Under the prevailing view, this allegation creates a plausible inference that Plaintiff has standing to bring claims based on the other identified products in the line.

The Court agrees with Defendant on its second point—Plaintiff fails to plead facts raising an inference that she has standing to pursue injunctive relief. "A plaintiff

---

suffered from purchasing the product. (Mot. 14–15.) This pertains to statutory standing under the UCL, FAL, and CLRA, not to constitutional standing, so it does not constitute a subject-matter jurisdiction challenge. *Coppel v. SeaWorld Parks & Ent., Inc.*, No. 3:21-cv-01430-RSH-DDL, 2023 U.S. Dist. LEXIS 68395, at *14 (S.D. Cal. Mar. 22, 2023) (citing *Nw. Requirements Utils. v. Fed. Energy Regul. Comm'n*, 798 F.3d 796, 808 (9th Cir. 2015)); *see also Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009). The Court declines to address it given the disposition on the merits in the following section.

must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). For injunctive relief, which is a prospective remedy, "the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Plaintiff's pleading shows that she is now on notice that MONDAY Haircare products contain some slack fill. Plaintiff's admitted status as a consumer rights tester raises an inference that she is more knowledgeable of slack fill issues in consumer products than the average consumer and is not likely to be deceived again by the amount of slack fill in Defendant's shampoo products. (*See* FAC ¶ 62.) As Defendant persuasively notes, given the explicit disclosure of product volume on the packaging face, (*id.* ¶ 1), "Garcia can readily determine the amount of shampoo in the Product before purchasing it, warranting dismissal of Plaintiff's claims seeking equitable relief," (Reply 5); *cf. Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 U.S. Dist. LEXIS 217534, at *13–14 (C.D. Cal. Oct. 17, 2018) ("Plaintiff has not adequately explained why he will be deceived by slack-fill in the future, now that he knows that he can easily determine the number of pretzels in each package by simply reading the label. . . . Because Plaintiff has not explained why he must rely on the size of the package in making future purchases, the Court finds that he has not alleged an actual and imminent threat of future injury." (internal quotation marks omitted)).

The claims for injunctive relief are dismissed.

### B.     Reasonable Consumer Standard

Of all the Rule 12(b)(6) arguments, the Court only reaches Defendant's contention that Plaintiff cannot plausibly allege that reasonable consumers could be misled by the products at issue. (Mot. 23–26.)

"California's UCL, FAL, and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers." *Whiteside v. Kimberly*

6

*Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). Claims thereunder "are governed by the reasonable consumer standard, which requires a plaintiff to show that members of the public are likely to be deceived by the defendant's marketing claims." *Id.* (internal quotation marks omitted). "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 777–78 (internal quotation marks omitted). The standard usually presents a question of fact inappropriate for decision on the pleadings, but in rare cases claims may be dismissed "when the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived." *Id.* at 778 (cleaned up); *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." (internal quotation marks omitted)).

This is one of those rare cases. The allegations in the complaint undermine Plaintiff's assertion that "*nothing* on the outside of the Product or its label would provide Plaintiff with any meaningful insight as to the amount of product to be expected." (FAC ¶ 28.) Defendant sells its liquid shampoo by *volume*, not *weight*, unlike most products at issue in slack fill cases. In California, liquid consumer products are sold by fluid volume measure, and such products' labels must declare the net quantity of the commodity in the package, exclusive of the packaging. John T. McGuire et al., Nat'l Inst. of Standards & Tech., NIST HB 130-2025, *Uniform Laws and Regulations in the Areas of Legal Metrology and Fuel Quality* 65–66 (2025), https://doi.org/10.6028/NIST.HB.130-2025 [https://perma.cc/HQ6C-SEJH] ("Handbook 130"); *see* Cal. Code Regs. tit. 4, § 4510 (adopting packaging and labeling regulations published in Handbook 130).

Plaintiff alleges that "[d]isclosures of *net weight* . . . do not allow the reasonable consumer to make any meaningful conclusions about the quantity of item contained in

7

the Product's containers," (FAC ¶ 29 (emphasis added)), but she says nothing of the effect on reasonable consumers of explicit disclosures of *fluid volume* on the face of product packaging, (*see id.* ¶ 1). There is little to no likelihood that a reasonable consumer considering the purchase of MONDAY Haircare products, which explicitly state the volume of liquid shampoo contained in each bottle, would expect the product to contain *more* shampoo than stated, even if the bottle theoretically could hold more shampoo.

True, one court in this district previously observed in dicta that "a reasonable consumer is not necessarily aware of . . . how . . . weight *or volume* correlates to the product's size." *Escobar v. Just Born Inc.*, No. CV 17-01826 BRO (PJWx), 2017 U.S. Dist. LEXIS 186573, at *25 (C.D. Cal. June 12, 2017) (emphasis added) (considering product sold by weight); *see also Spacone v. Sanford, LP*, No. CV 17-02419-BRO (MRWx), 2017 U.S. Dist. LEXIS 228377, at *16–17 (C.D. Cal. May 11, 2017) (assuming a plaintiff had mistakenly conflated volume and weight measurements, and determining that the plaintiff had plausibly alleged claims given an "independent allegation that the Krazy Glue includes less than 20% of its total capacity"). But as applied to volume measurements, this position falls apart under any scrutiny. A reasonable consumer might not be able to mentally convert a disclosed weight to evaluate the amount or quantity of product in a package, especially without a keen understanding of the product's density. *See Escobar*, 2017 U.S. Dist. LEXIS 186573, at *26 n.4 ("In the Court's view, the reasonable consumer is unlikely to (1) make volume conversions from cylindrical cups to rectangular prisms; and (2) know the density of candy products, such that the printed weight of candy may be converted to approximate the volume of candy product packaged in a rectangular prism."); *see also Widmer v. Hodge*, No. 13-cv-0025-SCW, 2015 U.S. Dist. LEXIS 53946, at *12 n.2 (S.D. Ill. Apr. 24, 2015) ("In the American system of measurement, a cup is 8 fluid ounces. However, whether a cup is eight ounces by weight depends on the density of the substance measured."); *but see Cody v. Conagra Brands, Inc.*, 773 F. Supp. 3d 890,

8

1 | 896 (C.D. Cal. 2025) (collecting slack fill cases holding that a reasonable consumer could not be deceived by a consumable product that discloses net weight, number of units per serving, and number of servings per container). Unlike weight, though, volume is a measure of the three-dimensional space an object or substance occupies. A volume disclosure on a product label necessarily communicates the physical dimensions of the commodity in its packaging—and, by implication, how much slack fill the packaging might have relative to the commodity therein.

Just as "qualifiers in packaging . . . can ameliorate any tendency of the label to mislead," so too can the label ameliorate any tendency of the packaging to mislead. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (internal quotation marks omitted); *see also Trader Joe's*, 4 F.4th at 882 ("[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." (quoting *Bell v. Publix Super Markets Inc.*, 982 F.3d 468, 477 (7th Cir. 2020))). Plaintiff pleads that a reasonable consumer would "expect[] that the quantity of shampoo is commensurate with the size of the container." (*Id.* ¶ 29.) Plaintiff also provides that MONDAY Haircare products are filled to about 75% capacity after removing the pump with the dip tube mechanism, which occupies space in the interior of the bottle. (FAC ¶¶ 1, 30; *see id.* ¶¶ 21–24 (describing pump mechanism).) Thus, Plaintiff rests her theory on the notion that a reasonable consumer could be deceived into believing that a shampoo product retailing in a bottle with a capacity of 16 fluid ounces contains close to 16 fluid ounces of shampoo even though the label says the bottle contains 12 fluid ounces of shampoo and the bottle features a dip tube that necessarily occupies some of the space in the bottle interior. That is simply implausible.

Moreover, the Court agrees with the reasoning of *Argueta v. Henkel Corp.*, 793 F. Supp. 3d 1192 (C.D. Cal. 2024). The *Argueta* court also considered false advertising claims based on slack fill in a shampoo product. *Id.* at 1195–96. Applying the reasonable consumer standard, the court determined that a reasonable consumer could not be

misled given that the product "contains an accurate net weight statement and [that] the consumer can both hold the Shampoo Bottle and also feel the weight of the contents move within it." *Id.* at 1198.[5] Analogizing *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), the court opined:

> Consumers receive the amount of Product as stated on the Shampoo Bottle. Further, the Shampoo Bottle is sold in a retail store that sells a variety of mass-produced toiletries. Based on this context, a reasonable consumer would likely understand that bottles, like the Shampoo Bottle, would contain some slack fill space as these bottles have been mass-produced, packaged, and shipped, and thus subject to circumstances that countenance against a completely full bottle of liquid, such as spillage, jostling, and/or various air pressure environments. Therefore, like in *Ebner*, this Court does not find it plausible that a reasonable consumer would expect 'the weight or overall size of the packaging to reflect directly the quantity of product contained therein' . . . .

*Argueta*, 793 F. Supp. 3d at 1199 (quoting *Ebner*, 838 F.3d at 967).

Plaintiff offers no convincing argument for diverging from the well-reasoned decision in *Argueta*. Plaintiff notes that, unlike in *Argueta*, the products here have a pump and dip tube, so reasonable consumers would likely refrain from inspecting the products in a retail store by shaking or opening the bottle in order to avoid making a mess, being accused of product tampering, or being exposed to tort litigation. (Opp'n 12; FAC ¶¶ 24, 26, 66–67.) Plaintiff's allegations and argument to this end dwell in the

---

[5] Like the parties here, the *Argueta* court mistakenly stated that the defendant sold the product by weight, not volume. *See Argueta*, 793 F. Supp. 3d at 1195 (noting product label disclosed fluid ounce and milliliter measurements). Its substantive reasoning is still persuasive.

heightened reality of a late-night infomercial, not the realm of plausibility. (*See* Reply 2 ("*Reasonable* consumers do not think this way.").) To wit, even a consumer with a lay understanding of the physics of dispenser pumps on consumer products would recognize that shaking a shampoo bottle is not likely to cause a discharge from the nozzle. (*See* Mot. 11 (describing mechanics of pump mechanisms).) Given the modern ubiquity of pump mechanisms on shampoo, lotion, and other liquid cosmetics bottles, (*see* FAC ¶¶ 22–23, 32), virtually any able adult consumer could remove a pump lid to inspect the products' fill level (or, as might be more common with similar perfumed toiletries, preview their scent) without inciting slip-and-fall litigation. Moreover, as discussed above, the pump lid undermines Plaintiff's theory insofar as a reasonable consumer would understand that such pumps require dip tube mechanisms that occupy space in the interior of product containers that otherwise could be occupied by the product itself. Plaintiff also contends that *Argueta* wrongfully reasoned that a consumer could ascertain the slack fill in a shampoo bottle by manipulating it. (Opp'n 13; *see* FAC ¶ 27 ("Even if a reasonable consumer were to 'shake' the Product before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill . . . .").) Not so. The average consumer does not need a degree in fluid mechanics to appreciate that even a viscous liquid like shampoo will make a sloshing sound and sensation when shaken in a bottle and that the timbre of the sloshing will change depending on how much air is in the bottle.

   Accordingly, the Court determines that "no reasonable consumer" of shampoo retailing at a big-box store for $6.99 "expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." *Ebner*, 838 F.3d at 967; (*see* FAC ¶¶ 60–61). Plaintiff's claims are implausible, so they must be dismissed.

///

### C. Amendment

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Futility alone may warrant denial of leave to amend "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). The products at issue could not deceive a reasonable consumer in the manner Plaintiff asserts, so amendment would be futile. *See Argueta*, 793 F. Supp. 3d at 1201 (denying leave to amend "because the Court has found that the Shampoo Bottle cannot deceive a reasonable consumer as a matter of law" and "Plaintiff has also not provided any basis for the Court to conclude that additionally pleaded facts could render the Shampoo Bottle or any of its features deceptive").

## IV. CONCLUSION

The Court grants the motion in substantial part. The Court dismisses the first amended complaint and denies leave to amend. The Clerk shall enter judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**

Dated: December 9, 2025

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

12